1  **WO**

2

3

4

5

6                    IN THE UNITED STATES DISTRICT COURT

7                        FOR THE DISTRICT OF ARIZONA

8

9   Rowpar Pharmaceuticals, Inc., an Arizona         No. CV13-01071-PHX DGC
    corporation, and Micropure, Inc., a
10  Nevada corporation,                              **ORDER**

11                           Plaintiffs,

12           v.

13  Lornamead, Inc., a Delaware corporation,

14                           Defendant.

15

16          Defendant Lornamead, Inc. has filed a motion to dismiss for lack of personal

17  jurisdiction and improper venue or, in the alternative, to transfer the case to the

18  Western District of New York.  Doc. 22.  The motions are fully briefed.  For the

19  following reasons, the Court will deny the motions.[1]

20  **I.      Background.**

21          Rowpar Pharmaceuticals, Inc. ("Rowpar") is an Arizona company that

22  produces and sells toothpaste under the "CloSYS" brand.  Doc. 1, ¶¶ 2, 7.  Rowpar

23  produces versions of CloSYS with and without fluoride, known as "CloSYS Fluoride"

24  and "CloSYS Fluoride-Free," respectively.  *Id.*, ¶¶ 20, 22.  Micropure, Inc.

25

26  ---
    [1] The parties' requests for oral argument are denied because the issues have been fully
27  briefed and oral argument will not aid the Court's decision.  *See* Fed. R. Civ. P. 78(b);
    *Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998).  The Court also notes that
28  Defendant's reply memorandum violates the type size requirements of LRCiv
    7.1(b)(1).  Defendant shall comply with the Court's local rules in all future filings.

("Micropure") is a Nevada corporation and a wholly owned subsidiary of Rowpar. *Id.*, ¶ 8.  Lornamead, Inc. ("Defendant") is a Delaware corporation that manufactures toothpaste.  *Id.*, ¶¶ 3, 9.  Defendant's principal place of business is in Harrison, New York, and it has a manufacturing facility in Tonawanda, New York.  *Id.*, ¶ 9.

Defendant was at one point the primary manufacturer of CloSYS Fluoride-Free for Rowpar.  *Id.*, ¶ 35.  This arrangement was formalized by a 2006 contract between Defendant and Rowpar, known as the Master Supplier Agreement ("MSA").  *Id.*, ¶ 30.  In 2012, Defendant negotiated with Rowpar to become a manufacturer of CloSYS Fluoride.  *Id.*, ¶ 37.  At that time, Defendant and Rowpar entered into a "Bilateral Confidentiality and Non-Analysis Agreement," ("BCNA").  *Id.*, ¶ 37.  Both the MSA and the BCNA contain provisions aimed at preventing the misuse and unauthorized disclosure of confidential information.  *Id.*, ¶¶ 31-34, 38-41.

Rowpar and Micropure (collectively, "Plaintiffs") filed a complaint asserting claims for misappropriation of trade secrets, breach of both the MSA and the BCNA, patent infringement, and requesting injunctive relief.[2]  Doc. 1.  The complaint alleges that Defendant used confidential information provided by Rowpar to create a product that is "materially identical" to CloSYS Fluoride, which Defendant now manufactures for Walgreens.  *Id.*, ¶¶ 47-49, 55.  The complaint further alleges that the "copy-cat" Walgreen's toothpaste ("Walgreens Product") produced by Defendant is harming the sales and reputation of CloSYS Fluoride.  *Id.*, ¶¶ 57-60, Doc 30, ¶ 51.  In contrast, Defendant contends that it began producing the Walgreens Product months before receiving any confidential information regarding CloSYS Fluoride.  Doc 22-1, ¶ 11.  Defendant further alleges that it created the Walgreens Product using the "ingredient list on the box" of CloSYS Fluoride and "standard reverse-formulating methods."  *Id.*,

---

[2] Defendant alleges that the relevant patent expired on July 7, 2013.  Doc 22 at 6, n. 6. Because Defendant presents no evidence to support this assertion, and such evidence likely would not be considered in any event in a motion to dismiss, the Court does not consider it.

¶ 13.  Defendant argues that it is not subject to personal jurisdiction in this Court and that Arizona is the improper venue for this action.  *See* Doc. 22.

## II.    Motion to Dismiss for Lack of Personal Jurisdiction.

Plaintiffs bear the burden of establishing personal jurisdiction.  *See Ziegler v. Indian River Cnty*, 64 F.3d 470, 473 (9th Cir. 1995).  Because the Court is resolving Defendant's motions without an evidentiary hearing, Plaintiffs "need make only a prima facie showing of jurisdictional facts to withstand the motion to dismiss." *Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir. 1995).  That is, Plaintiffs "need only demonstrate facts that if true would support jurisdiction[.]" *Id.* [3]

As there is no applicable federal statute governing personal jurisdiction, Arizona's long-arm statute applies.  *See Terracom v. Valley Nat'l Bank*, 49 F.3d 555, 559 (9th Cir. 1995).  Arizona Rule of Civil Procedure 4.2(a) "provides for personal jurisdiction co-extensive with the limits of federal due process." *Doe v. Am. Nat'l Red Cross*, 112 F.3d 1048, 1050 (9th Cir. 1997).  Federal due process requires that a defendant have certain "minimum contacts" with the forum state such that the exercise of personal jurisdiction does not offend "traditional notions of fair play and substantial justice." *See Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

Neither party contends that Defendant is subject to general jurisdiction.  The Ninth Circuit has established a three-part inquiry for specific jurisdiction: (1) has the defendant purposefully directed his activities at the forum or a resident thereof or performed some act by which he purposefully availed himself of the privileges of conducting activities in the forum, (2) do the claims arise out of or relate to the defendant's forum-related activities, and (3) is the exercise of jurisdiction reasonable?

---

[3] Defendant's request for an evidentiary hearing (Doc. 39 at 3, n.4) is denied.  The Court finds that there is sufficient evidence in the pleadings to render a decision.  *See Data Disc, Inc. v. Sys. Tech. Assoc., Inc.*, 557 F.2d 1280, 1285 (9th Cir. 1977) ("Because there is no statutory method for resolving [a 12(b)(2) motion to dismiss], the mode of its determination is left to the trial court.")

*See Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004) (citation omitted).

This Court's jurisdiction over Plaintiffs' patent infringement claim is governed by the law of the Federal Circuit. *See Nuance Communications, Inc. v. Abbyy Software House*, 626 F.3d 1222, 1230 (Fed. Cir. 2010). The relevant test, however, is virtually identical to the test employed by the Ninth Circuit. *See id.* at 1231 (citing *Schwarzenegger*, 374 F.3d at 802).

### A.    Purposeful Direction or Availment.

The "purposeful availment" or "purposeful direction" prong is analyzed differently depending on whether the claim asserted sounds in tort or contract. *Yahoo! Inc. v. La Ligue Contre Le Racisme et L'Antisemitisme*, 433 F.3d 1199, 1206 (9th Cir. 2006). In tort cases, courts analyze "whether a defendant purposefully direct[ed] his activities at the forum state," and apply an "effects test that focuses on the forum in which the defendant's actions were felt, whether or not the actions themselves occurred in the forum." *Id.* (citing *Schwarzenegger*, 374 F.3d at 803) (internal quotation marks omitted). For contract cases, courts "inquire whether a defendant 'purposefully avails itself of the privilege of conducting activities' or 'consummate[s] [a] transaction' in the forum." *Id.*[4]

### i.    Contract and Patent Claims.

A defendant has purposely availed himself of a forum where he "deliberately has engaged in significant activities within a [s]tate or has created continuing obligations between himself and residents of the forum." *Burger King v. Rudzewicz*, 471 U.S. 462, 475-76 (1985) (internal citations and quotation marks omitted). The purposeful availment standard "requires that the defendant engage in some form of

---

[4] The Federal Circuit uses slightly different language, looking to whether the defendant "purposefully directed activities" at the forum. *Nuance*, 626 F.3d at 1231. The analysis, however, is essentially the same. *See id.* at 1232-33 (applying *Burger King*).

affirmative conduct allowing or promoting the transaction of business within the forum state." *Gray & Co. v. Firstenberg Machinery Co.*, 913 F.2d 758, 760 (9th Cir. 1990) (quoting *Shute v. Carnival Cruise Lines*, 897 F.2d 377, 381 (9th Cir. 1988)). The specific focus on affirmative conduct "is designed to ensure that the defendant is not haled into court as the result of random, fortuitous, or attenuated contacts." *Id.*

Taken as true, the allegations in Plaintiffs' complaint and both parties' affidavits demonstrate that Defendant's contacts with Arizona are neither random nor attenuated.  Defendant has clearly engaged in affirmative conduct promoting business transactions in Arizona.  As to the MSA, Defendant has maintained a business relationship with Plaintiffs by serving as the primary manufacturer of CloSYS Fluoride-Free over a period of several years. Doc. 1, ¶¶ 30, 35-36, Doc. 22, ¶ 5, Doc. 30, ¶¶ 12-26.  This relationship resulted in multiple contacts with Arizona, including emails, phone calls, and in-person meetings.  Doc. 30, ¶¶ 19, 22, 25-26.  Defendant then continued to solicit business from Plaintiffs, leading to execution of the BCNA. *Id.*, ¶¶ 14-15, 36-37.   The BCNA-related contacts include representatives of Defendant visiting Plaintiff Rowpar's Arizona offices (Doc. 22-1, ¶ 9-10, 26), sending pricing proposals to Plaintiffs (*Id.*, ¶ 21), and email and telephone negotiations of the BCNA (*Id.*, ¶ 23).  *See also* Doc. 30, ¶¶ 32-49.  The Court concludes that these contacts with Arizona concerning the MSA, the BCNA, and Micropure's patent, satisfy the first requirement for specific jurisdiction.

### ii.    Tort Claims.

A defendant purposefully directs conduct at forum where he has "(1) committed an intentional act, which was (2) expressly aimed at the forum state, and (3) caused harm . . . which is suffered and which the defendant knows is likely to be suffered in the forum state." *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1077 (9th Cir. 2011) (quoting *Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1128 (9th Cir. 2010)); *see also Yahoo! Inc.*, 433 F.3d at 1207

(clarifying that the "'brunt' of the harm need not be suffered in the forum state").  The Ninth Circuit has explained that "express aiming" occurs when the "defendant is alleged to have engaged in wrongful conduct targeted at a plaintiff whom the defendant knows to be a resident of the forum state." *Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*, 223 F.3d 1082, 1087 (9th Cir. 2000).

Plaintiffs' allegation that Defendant intentionally misappropriated their trade secrets for an improper purpose - the formulation of a "copycat" product for Walgreens - satisfies the first of an intentional element.  Doc. 1 at ¶ 47-49.  Plaintiffs allege that Defendant solicited and received confidential information about the production of Plaintiffs' CloSYS products and used that information to create the Walgreens Product.  Taken as true, these allegations show that Defendant engaged in wrongful conduct targeted at Plaintiffs, whom Defendant knew to be residents of Arizona.  Doc. 1 at ¶ 36-37, 42-43, 47-49; *see Menken v. Emm*, 503 F.3d 1050, 1059 (9th Cir. 2007).  Finally, Plaintiffs allege that Defendant's actions caused them harm, which Defendant knew would be felt primarily in Arizona because it was aware that Plaintiffs are Arizona residents.  Doc. 1 at ¶ 14-16, 55-60.  The facts of this case thus satisfy all three elements of the Ninth Circuit's test for purposeful direction and the first requirement for specific jurisdiction for the tort claims.

### B.      Forum-Related Activities.

"The second requirement for specific jurisdiction is that the contacts constituting purposeful availment must be the ones that give rise to the current suit." *Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*, 223 F.3d 1082, 1088 (9th Cir. 2000). The Ninth Circuit "measures[s] this requirement in terms of 'but for' causation." *Id.* The requirement is easily satisfied in this case.  Plaintiffs allege that Defendant engaged in multiple contacts with Arizona which led to the negotiation and execution of both the MSA and the BCNA, as well as Defendant's receipt of confidential information regarding Plaintiffs' products, and that Defendant purposefully misused

the confidential information.  Doc. 1, ¶¶ 14-16, 37, 42-43.  But for these contacts and tortious actions, the claims in this case would not have arisen.

### C.   Reasonableness.

Where the previous two requirements are met, the burden shifts to the defendant to "present a compelling case that the presence of some other considerations would render jurisdiction unreasonable."  *Burger King*, 471 U.S. at 477; *see Ballard*, 65 F.3d at 1500 (characterizing this as a "heavy burden of rebutting the strong presumption in favor of jurisdiction").  Seven specific factors must be considered in making the reasonableness determination: "(1) the extent of the defendant's purposeful interjection into the forum state, (2) the burden on the defendant in defending in the forum, (3) the extent of the conflict with the sovereignty of the defendant's state, (4) the forum state's interest in adjudicating the dispute, (5) the most efficient judicial resolution of the controversy, (6) the importance of the forum to the plaintiff's interest in convenient and effective relief, and (7) the existence of an alternative forum."  *Bancroft*, 223 F.3d at 1088 (citing *Burger King*, 471 U.S. at 476-77).  Defendant raises arguments as to prongs one, two, five, and seven.

Defendant argues that it has not purposefully injected itself into Arizona.  Doc. 22 at 13.  As already discussed, Plaintiffs have alleged facts sufficient to show that Defendant has purposefully injected itself into Arizona by soliciting and maintaining an ongoing business relationship with Plaintiffs and engaging in tortious acts directed at Plaintiffs.

Defendant argues it would be burdensome to litigate in Arizona because its offices and employees are located in New York.  *Id.*  Examining the burden on Defendant "in light of the corresponding burden" on Plaintiffs if they were required to litigate the claim in New York, this factor is neutral.  *Brand v. Menlove Dodge*, 796 F.2d 1070, 1075 (9th Cir. 1986).

Defendant contends that the Western District of New York would be a more

efficient venue and cites statistics comparing the caseloads of that district with the District of Arizona. Doc. 22 at 13. In evaluating this factor, however, the Court should look "'primarily at where the witnesses and the evidence are likely to be located.'" *Menken*, 503 F.3d at 1061 (citation omitted). Because evidence and witnesses are located in both Arizona and New York, "neither forum has a clear efficiency advantage[.]" *Id.* Further, both districts appear to have comparable caseloads. This factor is also neutral.

Finally, Defendant correctly argues that an alternative forum is available in the Western District of New York. Although this factor favors Defendant, an analysis of the remaining factors demonstrates that Defendant has not presented a compelling case that personal jurisdiction in Arizona would be unreasonable. Defendant presents no reason why litigating this suit in Arizona would conflict with New York's sovereignty. Nor does it dispute that "Arizona has a strong interest in ensuring that its residents are compensated for their injuries." *See Gates Learjet Corp. v. Jensen*, 743 F.2d 1325, 1333 (9th Cir. 1984). Additionally, litigating this claim in Arizona serves the Plaintiffs' interest in obtaining convenient and effective relief. On balance, the seven reasonableness factors do not weigh heavily in favor of Defendant.

## D. Conclusion.

The Court finds that specific jurisdiction exists with respect to Defendant for all claims. The Court further finds that the exercise of personal jurisdiction over Defendant will not violate the principles of due process.

## III. Motion to Dismiss for Improper Venue.

Defendant argues that this case should be dismissed for improper venue. Doc. 22 at 14-16. The Court finds that venue is proper under 28 U.S.C. § 1391(b)(2), which provides that a civil action may be brought in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of the property that is the subject of the action is situated."

The parties' dealings in this case were conducted orally, electronically, and in writing. The parties executed two agreements while Plaintiffs were located in Arizona. Doc. 1, ¶¶ 30, 37. Plaintiffs transmitted the confidential formula for CloSYS Fluoride from Arizona. *Id.*, ¶¶ 42-43. Defendant directed communications about the business relationship to Arizona, including solicitations for new business. *Id.*, ¶¶ 36-37; Doc. 30, ¶¶ 34, 39-47. The negative effects of Defendant's production of the Walgreens Product are felt in Arizona. Doc. 30, ¶ 51. The trade secrets and patent that are the subject of this action are property of Arizona residents. Doc. 1, ¶¶ 7-8, 19, 27-28. Given these facts, the Court concludes that § 1391(b)(2) is satisfied and finds that venue is proper in Arizona.

**IV.    Motion to Transfer.**

Defendant moves in the alternative to transfer this action to the Western District of New York under 28 U.S.C. § 1406(a), which provides that where a case is filed "laying venue in the wrong division or district," the court "shall dismiss, or . . . transfer such case to any district or division in which it could have been brought." Because the Court finds that venue is proper in the District of Arizona, this motion is denied.

**IT IS ORDERED** that Defendant's motion to dismiss and motion to transfer (Doc. 22) is **denied**.

Dated this 7th day of October, 2013.

_____
David G. Campbell
United States District Judge